Charles F. Hubbs & Company v. Commissioner.
Charles F. Hubbs & Co. v. Commissioner
Docket No. 19431.
United States Tax Court
1949 Tax Ct. Memo LEXIS 64; 8 T.C.M. (CCH) 903; T.C.M. (RIA) 49247; September 30, 1949
*64 Petitioner seeks to include in its equity invested capital for 1944 an amount in addition to that allowed by respondent representing what it claims to be the value of intangibles and good will acquired incident to the exchange of its capital stock for the assets of a sole proprietorship in 1908. Held, petitioner has failed to sustain its burden of proof and particularly has failed to prove the factors necessary to apply the formula set forth in A.R.M. 34. John M. McEvoy, Esq., for the petitioner. Stephen P. Cadden, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion In the notice of deficiency, respondent determined an overassessment in income tax, and deficiencies in declared value excess profits and excess profits taxes for the taxable year 1944 in the following amounts: Over-
assessment
Deficiency
Excess Profits Tax
$2,996.84
Declared Value Excess
Profits Tax
141.07
Income Tax
$799.64
Petitioner does not contest the several adjustments to its tax liability made by respondent in the notice of deficiency but alleges as error the respondent's disallowance of its claim for a refund in 1944 of excess *65 profits taxes in the amount of $16,172.65. The sole issue herein is whether the petitioner, in computing its equity invested capital for 1944, is entitled to include therein any additional amount representing the value of intangibles and good will acquired incident to a transaction wherein the petitioner in 1908 exchange capital stock for the business and assets of a sole proprietorship. Findings of Fact The petitioner, Charles F. Hubbs & Company, is a corporation organized and existing under the laws of New York with its principal office at 383 Lafayette Street, New York City. Its Federal tax returns for the taxable year ended December 31, 1944, were filed with the collector of internal revenue for the second district of New York. Petitioner was organized on or about January 2, 1908, for the purpose of taking over a paper business conducted at that time by Charles F. Hubbs as a sole proprietorship under the name of "Charles F. Hubbs & Co.", hereinafter referred to as the proprietorship. In January, 1908, the petitioner, in exchange for all the assets, including the good will, of the proprietorship, issued in Hubbs 1,250 shares of its authorized capital stock of 2,000 shares *66 with a par value of $100 per share. The agreement between petitioner and Hubbs read in part as follows: "* * * the directors of the Company have ascertained, adjudged and declared that the goodwill, business and property hereinafter described are of the fair value of One hundred and twenty-five thousand dollars ($125,000) * * *." The proprietorship did not carry any item on its books at the time of the transfer representing the value of good will or intangibles. The value of the net tangibles at the time of the transfer was $119,520.12 and the value of unexpired contracts was $5,479.88, totaling $125,000. The net tangible assets in excess of liabilities of the proprietorship at the beginning of each of the years 1899 to 1907, inclusive, as disclosed by its books and records of account, were as follows: Net
Net
Year
Tangibles
Year
Tangibles
1899
$40,696.01
1904
$ 47,237.60 *
1900
49,371.79
1905
63,474.56
1901
41,534.55
1906
84,122.06
1902
52,047.45 *
1907
105,327.50
1903
44,090.96 *
*67 The books of the proprietorship disclose earnings for the years 1899 to 1907, inclusive, before and after the payment of a so-called "special salary" to Hubbs in each of the years 1903 to 1907 as follows: Earnings
Special
Earnings
Before
Salary Paid
After
Year
Salary
to Hubbs
Salary
1899 **
$28,787.25
1900
18,455.64
1901
22,413.76
1902
10,961.89
1903
18,464.59
$15,000.04
$ 3,464.55
1904
18,873.52
15,000.00
3,873.08
1905
32,498.58
15,000.44
17,498.14
1906
42,939.61
16,800.44
26,139.17
1907
38,015.87
16,800.00
21,215.87
The sales as disclosed by the books of the proprietorship during the years 1903, 1905, 1906, and 1907, were as follows: Year
Sales
1903
$408,703.31
1905
517,472.11
1906
699,893.36
1907
831,371.37
Charles F. Hubbs was recognized as a business man of great ability and was well known and highly respected by the mills and merchants engaged in the domestic paper trade. He was possessed of exceptionally good judgment and experience. *68 Although he was principally occupied with the purchasing end of the business, he had personal contacts and a personal following. The business had been founded by the father of Charles F. Hubbs in 1855. At the time of its transfer to the petitioner in 1908, it was well known in the trade and was recognized as one of the best jobbing houses in New York, merchandising both domestic and imported paper, tissues, tape, and twine. It maintained an office, store, and warehouse in New York and a branch office in Philadelphia. It employed from 45 to 55 employees, including approximately 20 salesmen with sales territory embracing several northeastern states. Various names and numbers, such as "Ropene" "Sheepskin" and "Leather Paper" were used by the proprietorship to identify its different grades and types of paper which were well known in the trade. The proprietorship had agency contracts, some of which were exclusive, with approximately 10 domestic and foreign mills. At about the time of the organization of the petitioner, approximately 14 of the petitioner's employees subscribed for 336 shares of petitioner's stock at the par value of $100 per share. Only employees of the firm selected *69 by Hubbs were offered the opportunity to purchase shares and no stock was sold to friends, strangers, or in over-the-counter sales. During 1905, 1906, and 1907, the proprietorship paid import duty and brokerage fees on the importation of foreign paper and pulp in the respective amounts of $10,522.08, $27,176.56, and $49,558.18. The duty was paid under protest and refund claims were filed for each year. During 1914 and 1915, petitioner received refund of the import duties it had paid from 1904 to 1910 in the following amounts: July 13, 1914
$22,976.00
Sept. 10, 1914
34,464.00
Jan. 23, 1915
7,614.55
Sept. 30, 1915
1,948.89
Oct. 15, 1915
7,840.00
Dec. 31, 1915
2,203.12
Dec. 31, 1915
1,071.19
$78,117.75
Opinion ARUNDELL, Judge: The petitioner seeks in this proceeding to include in its equity invested capital for 1944 an amount which it claims is the value of certain intangibles and good will acquired incident to the exchange of its stock for the assets of a sole proprietorship. The Commissioner has allowed as equity invested capital the sum of $125,000 and the petitioner asks for an additional amount of $164,326.60. Equity invested capital, as defined *70 by section 718(a) of the Internal Revenue Code, [1] includes property previously paid in for stock, or as paid-in surplus, or as a contribution to capital. The statute further provides that such property is to be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange, which in the instant case is the cost of the property. (See section 113(a)(14) of the Internal Revenue Code; Regulations 111, section 29.113(a)(14)-1.) Where the taxpayer's basis is cost and the property was acquired in exchange for stock, cost is the fair market value of the stock at the time of its issuance. In the event the stock had no established market value, the cost is the fair market value of the tangible and intangible property acquired. Regulations 112, section 35.718-1. *71 Petitioner contends that incident to its acquisition of Hubbs' business in 1908, it acquired certain intangible assets, including the Hubbs' name, agency contracts, brand names, and the good will of the business. Petitioner claims that these assets had a value at the time of the transfer of at least $164,326.60 and that it is entitled to include this amount in computing its equity invested capital. Petitioner has introduced no evidence bearing upon the fair market value of its stock other than the $100 par value, which appears to have been the price adopted by the petitioner and Hubbs for the purposes of the exchange and which was the price obtained in later sales of small blocks of its stock to selected employees. None of the petitioner's stock was ever offered for sale to persons outside of the organization, nor was it at any time traded in in over-the-counter sales. The record indicates, and the parties apparently agree, that petitioner's stock had no established market value at the time of the transaction. Thus, it is incumbent upon the petitioner to show the fair market value, if any, of the intangibles claimed to have been acquired in connection with the exchange. Petitioner *72 submits that we may value such intangibles under the formula provided in A.R.M. 34, 2 C.B. 31. Simply stated, A.R.M. 34 provides a method of valuation based upon the average net tangible assets and the net earnings of the business over a period of years prior to the transfer which fairly reflects past earnings. White & Wells Co. v. Commissioner, 50 Fed. (2d) 120. It involves the selection of a rate representing a reasonable return on the average net tangible assets and the selection of a rate at which any excess earnings attributable to intangibles may be capitalized. Petitioner is correct in his contention that the principles of A.R.M. 34 have been frequently applied by this and other courts in cases involving the valuation of intangibles. However, underlying each determination has been a foundation of factual data from which the court was able to ascertain such vital elements as the existence and relative value of good will, and other intangible assets in the particular business; the rate of earnings which could reasonably be expected from the particular business on its intangibles during the years selected; the nature of the business, the risk involved; *73 and other factors material to the selection of a rate at which to capitalize any earnings determined to be attributable to the intangibles. Cf. Dwight & Lloyd Sintering Co., Inc., 1 B.T.A. 179; House & Herrmann, 13 B.T.A. 621; John Q. Shunk, 10 T.C. 293, reversed on another point, C.C.A. 6th, May 4, 1949, 173 Fed. (2d) 747. Satisfactory evidence from which such facts may be drawn must be before the court and the burden of presenting such evidence is borne by the party seeking to prove value by the use of A.R.M. 34, which in the instant case is the petitioner. The only evidence of any value produced by the petitioner consists of figures which it claims represent the value of the net tangible assets and the net earnings of the proprietorship from 1899 to 1907, inclusive. These figures, without explanation or interpretation, fail to establish a basis for the application of A.R.M. 34. It appears that these figures should be adjusted each year to reflect the value of the services of Hubbs as the directing head of the proprietorship. The record clearly demonstrates that Hubbs was an unusually capable executive and was primarily responsible *74 for the success of the business and that without his services the business would have been compelled to employ a manager or other supervisory personnel. Although the records of the proprietorship show that a so-called special salary was received by Hubbs during the years 1903 to 1907, inclusive, they fail to disclose what amount, if any, was paid as a salary in prior years. Nor is there any evidence from which we could determine an amount representing reasonable compensation for his services in any of the years selected by the petitioner for obtaining the average earnings of the proprietorship. It is evident however that, if the special salary may be regarded as reasonable compensation, the earnings no longer form a basis for the high value of good will contended for by the petitioner. A further examination of the petitioner's figures discloses that the net tangible assets and the net earnings of the business fluctuated to a wide degree from year to year. The earnings varied with no apparent relation to the value of the net tangibles employed and the petitioner has made no effort to explain the circumstances or to show which of the nine years reflect normal or abnormal business conditions. *75 Although the balance sheets of the proprietorship for each year from 1899 to 1907 disclose large amounts for accounts receivable, no reserve for bad debts appears on the books. Moreover, the record is devoid of any factual basis which would support the rate selected by petitioner or any rates which we might attempt to determine herein in applying A.R.M. 34. Petitioner has provided us with no evidence of what would constitute a fair return on the tangible property employed in such a business during the years 1899 to 1907, nor has it shown the existence or importance of good will or the value of brand names and agency contracts in the particular business acquired by the petitioner. The petitioner has wholly failed to produce evidence of the risk involved in the business, or any other basis for the determination of a rate at which to capitalize any earnings found to be attributable to intangibles. Finally, it is interesting to note that the agreement between Hubbs and the petitioner whereby the latter acquired the business recites that its directors ascertained that the good will, business, and property of Hubbs were of the fair value of $125,000 at the time of the exchange. It is *76 now well established that the selection of rates, in applying the principle of A.R.M. 34, must rest upon a reasonable estimate and not upon sheer speculation. Although it may be extremely difficult at this late date for petitioner to produce the facts from which such rates may be determined, even the impossibility of obtaining competent evidence does not release the petitioner from the burden of proving its case. Burnet v. Houston, 283 U.S. 223. In our opinion, petitioner has failed to sustain its burden of establishing that it is entitled to a greater invested capital than that allowed by respondent. Decision will be entered under Rule 50. Footnotes
*. These figures do not include the value of certain non-business assets which were carried on the proprietorship's books during the years 1901, 1902 and 1903.↩
**. The records of the proprietorship contain no evidence of any amount paid as a "special salary" to Hubbs during the years 1898 to 1902, inclusive.↩
1. SEC. 718. EQUITY INVESTED CAPITAL. (a) Definition. - The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b) - (1) Money Paid In. - Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital; (2) Property Paid In. - Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *↩